IN THE UNITED STATES DISTRICT COURT

CENTRAL DIVISION, DISTRICT OF UTAH

| | |
|---|---|
| LIFETIME PRODUCTS, INC., a Utah corporation, <br><br> Plaintiff, <br><br> v. <br><br> McCOURT MANUFACTURING, INC., an Arkansas corporation; and DANIEL PAUL CHAIRS LLC, a Tennessee corporation, <br><br> Defendants. | Case No. 1:05 CV 94 TC <br><br> **ORDER AND MEMORANDUM DECISION** <br><br> Judge Tena Campbell <br><br> Magistrate Judge Brooke C. Wells |

Rule 4(m) provides:

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.[1]

---

[1] Fed. R. Civ. P. 4(m).

1

Lifetime has filed a motion for extension of time to serve McCourt. Lifetime argues that there is good cause to support their motion and even absent good cause, the court should enlarge the time to serve McCourt. McCourt counters, arguing that Lifetime has failed to show good cause and furthermore, there is no basis for a permissive extension of time. The court finds that Lifetime's settlement negotiations, coupled with McCourt's conduct warrants an extension of time. Accordingly, the court GRANTS Lifetime's motion for extension of time to serve McCourt.

The court need not outline in detail the long factual history of this dispute as that is laid out in the parties' submissions. But the court finds the following brief review of the facts helpful. Lifetime provided a courtesy copy of its complaint to McCourt's counsel shortly after filing this action on July 19, 2005. Based on Lifetime's filing date they had until November 16, 2005 to effect service of process.

Following the filing of the complaint the parties exchanged correspondence over a couple of months airing their contentions. Central to the parties correspondence was Mr. McCourt's intention of not infringing any patent and a desire to rectify the

situation if in fact there was a problem.[2]  The parties sought various times and locations to meet and confer in person about possible settlement.  Unfortunately, circumstances prevented an earlier meeting, but finally on October 19, 2005, the parties met in Rogers, Arkansas.  At this meeting, Lifetime laid out a licensing proposal and McCourt agreed to consider the proposal.  Lifetime did not serve McCourt at this meeting, request a waiver of service, or request that someone else be authorized to accept service on behalf of Mr. McCourt.

Following the meeting the parties again exchanged correspondence.  Two days before the 120 day deadline Lifetime requested an agreement to waive service of the summons.  On the day before the deadline, McCourt's counsel requested further clarification and was going to forward a proposal after receiving Lifetime's response.  Lifetime responded that same day but received no return phone calls from opposing counsel.  Lifetime again sought a waiver of service but did not receive it.  On November 16, the 120th day since commencement of the action, McCourt countered with the same proposal of "nominal up-front payment for a paid-up license"[3] which had been previously offered

---

[2] See Decl. of L. Rex Sears ex. D, a letter from Mr. McCourt's counsel.

[3] Pla.'s Rep. p. 2.

and rejected.  Lifetime informed McCourt on November 17, 2005, the day after the 120 day period for effectuating service, that they would formally serve McCourt with the amended complaint.  On that same day McCourt commenced an action against Lifetime in the U.S. District Court of the Western District of Arkansas.  In that action McCourt seeks "a declaratory judgment of non-infringement and invalidity of certain Lifetime patents, among other claims, including state claims of unfair business practices and unfair competition."[4]

Lifetime's attempts to effectuate its own service were delayed by the fact that Charles McCourt, McCourt Manufacturing's president, left the country until December 1 and left specific instructions that no one was to accept service in his absence.  On November 29, 2005, after several previous attempts, Lifetime's server sought to effect service on McCourt's plant manager.  But, the plant manager refused.  McCourt disputed this attempted service arguing that "[d]ropping a Complaint and Summons on a counter is not effective service."[5]

---

[4]  Def.'s Op. p. 4-5.

[5]  Sears Decl., ex. P, letter from Defendant's counsel.

As acknowledged by the parties, Rule 4(m) provides a two-step inquiry as set forth in *Espinoza v. United States*.[6]

> The preliminary inquiry to be made under Rule 4(m) is whether the plaintiff has shown good cause for the failure to timely effect service. In this regard, district courts should continue to follow the cases in this circuit that have guided that inquiry. If good cause is shown, the plaintiff is entitled to a mandatory extension of time. If the plaintiff fails to show good cause, the district court must still consider whether a permissive extension of time may be warranted. At that point the district court may in its discretion either dismiss the case without prejudice or extend the time for service.[7]

In the instant case the parties were involved in settlement negotiations. The court agrees with Plaintiff's argument that as a matter of policy the law should favor the settlement of controversies.[8] But, there are competing cases concerning whether or not the existence of good faith negotiations amount to good cause warranting an extension of the time period for service. Lifetime cites *Assad v. Liberty Chevrolet, Inc.*,[9] where the court found that good faith settlement negotiations

---

[6] 52 F.3d 838 (10th Cir. 1995).

[7] *Id.* 52 F.3d at 841.

[8] *See* Pla.'s Rep. p. 5; *see also Tulsa City Lines v. Mains*, 107 F.2d 377, 380 (10th Cir. 1939); *Grady v. de Ville Motor Hotel, Inc.*, 415 f.2d 449, 451 (10th Cir. 1969) ("It is well settled, as a matter of sound policy, that the law should favor the settlement of controversies, . . .").

[9] 124 F.R.D. 31 (D.R.I. 1989).

constituted good cause for an extension. Conversely, McCourt points to *Sprader v. Goodson*,[10] and other cases[11] where the courts question *Assad* and find that the existence of settlement negotiations alone is insufficient for a finding of good cause. Notwithstanding this persuasive authority, the court notes that this case does not only involve good faith negotiations by the party seeking an extension. It also involves conduct by the opposing party which helps justify an extension. Based on the record it appears that McCourt feigned a sincere interest in negotiations as a stall tactic. McCourt delayed contacting Lifetime, provided a last minute offer that had already been rejected, and tried to prevent proper service by unreasonably limiting who could accept service of process on behalf of McCourt. Furthermore, the very day after the time period expired McCourt filed a declaratory judgment action in Arkansas based on the same facts as the instant action.

This court has previously stated:

---

[10] 2001 U.S. Dist. Lexis 23793 *10 (S.D. Ohio 2001).

[11] In support of his position McCourt also cites *The Bank of Cape Verde v. Bronson*, 167 F.R.D. 370, 371 n.1 (S.D.N.Y. 1995) (citing cases that question whether *Assad* is good law); *Healthcare Compare Corp. v. Super Solutions Corp.*, 151 F.R.D. 114, 115-16 (D. Minn. 1993) (calling into question whether *Assad* is good law and even if it is, declining to apply it).

> an explicit threat of patent litigation gives rise to a reasonable apprehension of suit and simultaneously provides the initiative to enter negotiations designed to avoid that litigation. The controversy thus becomes ripe for adjudication as soon as the initial threat of patent litigation is made; but so as long as one party reasonably relies on the forbearance of the other during subsequent negotiations, there may be equitable and public policy reasons for discretionary dismissal of a declaratory action when one party unfairly takes advantage of that forbearance to secure a more convenient forum."[12]

The court finds the reasoning in *Agridyne* instructive in the instant case.  Lifetime did not file a declaratory judgment action in this district.  But, McCourt filed a declaratory action based on the same facts in a "more convenient forum."  The opportunity to do so arose from McCourt's actions which induced Lifetime to not effect service of process within 120 days.  The court finds there are equitable and public policy reasons for granting Lifetime's motion especially in light of McCourt's conduct.

Based on the foregoing, the court GRANTS Lifetime's motion to extend time to serve McCourt.  If McCourt disputes the validity of the service by Lifetime on the November 29, 2005, or

---

[12] *Agridyne Technologies, Inc. v. W.R. Grace & Co.-Conn.*, 863 F.Supp. 1522, 1527 n.6 (D.Utah 1994).

refuses to waive service of process, then Lifetime shall have an additional 30 days from the date of this order to serve McCourt.

DATED this 1st day of February, 2006.

BY THE COURT:

*Tena Campbell*

_____
Tena Campbell
United States District Judge